## Snyder v. Motorists Mutual Insurance Co.

*Milton D. Rosenberg*, for plaintiffs.
*Mark T. Wade* and *William C. Porter*, for defendants.

SWEET, *P.J.*, January 17, 1979—This matter is now before us on a petition to reconsider. On June 29, 1978, an opinion of our court en banc summarized the litigation this way:

"Billie C. Snyder, the plaintiff, filed a complaint in assumpsit against Motorists Mutual Insurance Company, defendant, with respect to his No-fault Motor Vehicle Insurance claiming that the insurer is obligated to pay him loss of wages, medical payments and other benefits. In addition, the plaintiff-husband, joined by his wife, filed a complaint in trespass against the driver of the other vehicle involved in the collision, one Donald C. Zimak.

"On the one hand, the assumpsit action is predicated upon the theory of a contractual obligation which the insurer has breached; on the other hand, the tort action is predicated upon the theory that the defendant Zimak breached a duty of care to the plaintiffs.

"On motions for counsel for the defendants in both cases, an order for consolidation was signed on March 30, 1978, and filed on April 3, 1978. Counsel for Billie C. Snyder filed exceptions to the order for consolidation."

The court en banc upheld the consolidation June 29, 1978, after oral arguments and brief, but on procedural grounds. The only reference to the merits was in the last sentence where we said: "We reach this decision more easily because we deem

the consolidation to be within the bounds of the exercise of reasonable discretion."

Plaintiff then moved to reconsider this decision of the court en banc, doing so on November 17, 1978. The same three judges heard it. We affirm.

Plaintiff thinks that the consolidation is prejudicial because it impinges on the collateral source rule, is unwise because it will multiply the issues, and that it delays the action. We will deal with these briefly and in reverse order.

The order for consolidation was signed March 30, 1978. Nine months have passed and we are still litigating the question of consolidation. Since presumably counsel cannot get ready for trial between now and January 15, when we next hear civil cases, it will be at least the February Sessions of 1979 before we can hear this on the merits, which otherwise could have been done, one assumes, in April or May of last year.

Whether or not these matters are properly consolidated vis-a-vis jury comprehension seems to be obviously within the discretion of the court, subject to an opportunity for the Superior Court to exercise hindsight on the record as it actually develops in trial. The issues seem to us to be commonplace and manageable. The greatest advantage of consolidation is the obvious one. We try the matter once, not twice.

The management of the civil list is an art which exists, probably at a pretty low level here, but which is not entirely free from difficulty. The parties, counsel, physicians, witnesses, judge and jury must be maneuvered into the same courtroom on the same day. One does not have to be a wizard to

recognize that an unwise continuance is at least as much the thief of time as undue procrastination.[1]

The next reason for consolidation is to avoid inconsistent verdicts. This is self-evident.

The third and more debatable reason is to seek better justice by washing the pair at once instead of the two socks separately. This arises out of the fundamental notion that the trier of fact can do a better job if he knows as much as possible about the situation.

At last, and I think the most emotionally intense argument of plaintiff here is that consolidation somehow violates the collateral source rule. If it does, that disadvantage to plaintiff should be made up by the fact that in a consolidation case even the dullest juror will realize there is insurance somewhere.

There does not seem to be much case law on the subject. Defendant, Zimak, wants the case consolidated even though it puts him at the same counsel table with an insurance company and he cites Azinger v. Pennsylvania Railroad Company, 262 Pa. 242, 105 Atl. 87 (1918), at 245, as upholding a consolidation of separate actions in favor of or against two or more persons which have arisen out of a single transaction, and the evidence by which they are supported is largely the same although the rights and liabilities of parties may differ. He also

---

1. The undersigned attended a course at the National College of Trial Judges at Reno this winter to study the anatomy of our enemy "Delay." One thing I got out of it was: Don't give any more continuances than you absolutely must if you want your list to move!

quotes 1 Goodrich-Amram 2d §213(a):10.1, that a joinder may be accomplished when any question of law or fact is common to the several actions regardless of how small a part the common question plays in each action.[2]

The other defendant, Motorist Mutual Insurance Company, also favors consolidation here. It reminds us that: "1 Goodrich-Amram 2d, Sec. 213(a): 13 specifically states that 'If entirely separate actions are tried together for purpose of convenience, the separate quality of the actions is in no way affected. The procedural rights of the parties, and the separate verdicts and judgments, will be as

---

2. The provision for separate claims permits the joinder of persons whose respective causes of action are entirely unrelated, provided those claims arise from a common factual background and a common question is presented. Under this provision, a single action may be brought by stockholders who have been led to buy or sell their stock by the false financial statements of corporate promoters or directors, by several persons falsely imprisoned by the same persons at the same time and place, by the owners of separate adjoining tracts of land in an action to determine title and the right to possession as against the same defendant, by a group of property owners in a subdivision in an action against the developer alleging breaches in the developer's common program, by the real owner and mortgagee of property destroyed by fire against the insurance company, by all employees who claim unpaid wages from an employer as a result of an identical dispute, by all purchasers from a vendor who base their action upon the same misrepresentations, by nine motion picture distributors in an action against a theatre operator based on fraudulent underrepresentation of receipts, by several taxpayer seeking to enjoin a license ordinance which applied to their business, by a group of doctors all affected by the conduct of the directors and administrators of a hospital . . . by two victims of successive assaults motivated by the same malice, by the co-owners of property for its conversion, and by several passengers injured in the same accident to their vehicle.

though the actions had been independently tried."

The long paragraphs from pages 5 and 6 of the Motorist Mutual Insurance Company's brief makes their point with some felicity and we adopt this language.

". . . Article III, Sec. 1009.301 of the No-Fault Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 abolishes tort liability with respect to injuries arising out of the maintenance or use of a motor vehicle except under certain express circumstances. The circumstance applicable here is that the tortfeasor remains liable for *non-economic* detriment if the accident results in medical costs in excess of $750.00. Note that only non-economic detriment is recoverable. The clear thrust of the act, therefore, is to have economic detriment paid for through a no-fault system, while keeping intact tort liability for what is commonly referred to as pain and suffering depending on the extent of the economic detriment suffered.

"Clearly, therefore, although a tortfeasor could not previously have ridden to immunity on the back of compensation paid by someone else, it can certainly ride to immunity on the back of legislation designed to provide just such transportation. This law is, furthermore, soundly based in reason. Since only non-economic detriment is now legally recoverable from a tortfeasor and then only upon reaching a certain level of economic detriment, it can no longer be said logically to be prejudicial to a plaintiff to allow evidence of the compensation for economic damages he has received. Such evidence may in fact be necessary to insure the jury's understanding of its limited function. Except for the triggering level of the $750.00, the extent of the economic loss and subsequent recovery is totally di-

vorced from the non-economic loss suffered, and knowledge of the former should have no prejudicial influence on the latter."

However, that is an answer to the argument made by plaintiff on the collateral source rule and not our reason for consolidation.

The reason for the consolidation was that the Rules of Civil Procedure and the law should be interpreted to provide for the prompt, just and simple solution of the matters presented to the courts. See Pa.R.C.P. 126. We think that the decision to consolidate is within our jurisdiction here, is related to our local problem of managing our trial list and should be so regarded.[3]

There does not seem to be any authority squarely on the point.[4] Plaintiff cited Berkebile v. Nation-

---

3. 7 Goodrich-Amram 2d §2229(a):6 and (a):7 says some helpful things here. It says that Rule 2229 "should be liberally construed so as to carry out its purpose of permitting joinder of parties whenever administrative convenience will be served by the prosecution of the various causes of action in one suit. The fact that such joinder was not permitted at common law is immaterial. The Rule is designed to abandon the common-law concept of joinder of parties. Decisions which attempt to construe the new procedure in the light of common-law principles should not be followed."

4. This is not the same case on the surface, but it seems pretty similar. As described in footnote 31, page 435 of 7 Goodrich-Amram: "31. It has been held that an injured employee and his employer's insurance carrier could join as plaintiffs in the alternative in a suit against the tortfeasor where it was disputed whether the employee had elected to take a compensation award and whether such award had been validly made and had been paid. If the award had been validly elected and had been made and paid, the insurer was the owner of the claim by subrogation. If the contrary were true, the employee still owned the right of action against the tortfeasor. Roecklein

wide Insurance Company, 6 D. & C. 3d 243 (1977), from Somerset County. Plaintiff said that Berkebile recognized that "[a] joint trial against Voll [tortfeasor] and Nationwide [insurance company] may indeed be prejudicial to both." We do not read it that way. Berkebile resulted in the overruling of the third preliminary objection of the defendant Nationwide. Judge Shaulis said this: "In the third objection, defendants move to strike the entire assumpsit action against Nationwide as a misjoinder of causes of action." He cites Rules 1020(c) and 2229(b) from the Rules of Civil Procedure, mentioning the general notion that defendants in trespass and assumpsit should not be joined. Judge Shaulis went on to say this: "However, we believe the complexities of the No-fault Act provide an exception in this case." He said: "A joint trial against Voll and Nationwide may indeed be prejudicial to both, but for convenience and in order to avoid unnecessary costs and delay to all parties, we think it appropriate that these actions remain as one during the pleading and pretrial stage."

Although he reserved the right to sever later on,

---

v. American Sugar Ref. Co., 222 App Div 540, 226 NYS 375 (1928)."

7 Goodrich-Amram 2d, footnote 81, page 447, says this: "Fallon v Esher, 68 Dist & Co Rep 225 (1949). Plaintiff joined as defendants the owner of an automobile and the driver, alleged to have been the agent of the owner at the time of the accident. The owner sought to have a separate trial of the action against him, on the ground that the driver had pleaded guilty to involuntary manslaughter and drunken driving, and had been sentenced, all of which would be prejudicial, if a joint trial were held. The court found no ground for invoking the unusual remedy of severance, and varying the usual rule of a joint trial of the causes of action. . . . " See also: Rupp v. Amsley and Smith, 85 D. & C. 233 (1953).

Judge Shaulis overruled Nationwide's preliminary objections to the joinder. We do not here stand on the Berkebile case, supra, although it seems to be the only literature in the field. As noted hereinabove, our reason for the consolidation is in order to try it only once and as soon as possible.